THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

ENTERED
CLERK, U.S. DISTRICT COURT

AUG - 2 2007

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION      BY DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED
CLERK, U.S. DISTRICT COURT

AUG - 1 2007

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION      BY DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

SUSAN LEE BARKER,

           Plaintiff,

v.

RIVERSIDE COUNTY OFFICE OF
EDUCATION,

           Defendant.

CASE No. EDCV 07-00274 SGL (JCRx)

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

ORDER DENYING DEFENDANT'S
REQUEST FOR ATTORNEY FEES

ORDER DENYING PLAINTIFF'S
REQUEST FOR SANCTIONS

      This matter is before the Court on defendants' motion to dismiss all claims, filed on May 29, 2007 (docket #6). The matter was heard on July 31, 2007. As stated on the record and as set forth below, the Court **GRANTS** defendant's motion to dismiss. Requests for attorney fees (by defendant) and for sanctions (by plaintiffs), which are set forth in the opposition and reply papers, are **DENIED**.

## I. Background

### A.   Plaintiff's Allegations

      From May 13, 2002, to August 1, 2006, plaintiff was employed by defendant as a teacher. Compl. ¶ 6. Plaintiff worked in defendant's Alternative Education Program with student with disabilities. Id. During the course of her employment, beginning as early as 2003, plaintiff complained to her employer it was not complying with the Individuals with Education Act ("IDEA"). Compl. ¶ 7. In April or

DOCKETED ON CM

AUG - 2 2007

1  May 2005, plaintiff filed a complaint with the United States Department of Education

2  Office of Civil Rights, and assisted in the filing of a class complaint on behalf of

3  certain students; defendant learned of these complaints in June and August, 2005.

4  Compl. ¶¶ 10, 12, 16.

5      Plaintiff alleges that defendant thereafter took retaliatory actions against her,

6  including changing her work assignments to sites further from her home, reducing

7  her case load, and refusing to allow her to fill in for other teachers during their

8  vacations.  Compl. ¶¶ 17(i)-(j), 18(c).  As a result of these and other allegedly

9  retaliatory actions, plaintiff was compelled to resign her position.  Compl. ¶ 20.

10  **B.**   **Plaintiff's Claims**

11      Based on these factual allegations, plaintiff brings the following claims:

12  (1) Violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 794; (2) violation of Title

13  II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; and

14  (3) violation of Title VI of the 1964 Civil Rights Act, 42 U.S.C. § 2000d.

15  **II. Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

16      In lieu of an answer, a party may file a motion to dismiss pursuant to Fed. R.

17  Civ. P. 12(b)(6), which provides that such a motion may be made where the pleader

18  has "fail[ed] to state a claim upon which relief can be granted."  Id.  In deciding a

19  Rule 12(b)(6) motion, the Court must also consider the requirements of Fed. R. Civ.

20  P. 8(a), which requires only a "short and plain statement of the claim showing that

21  the pleader is entitled to relief" or, when the claim at issue avers fraud or mistake,

22  the motion must be considered in conformity with Fed. R. Civ. P. 9(b), which

23  requires fraud and mistake to be pleaded with particularity.  See 5A Charles A.

24  Wright & Arthur Miller, Federal Practice and Procedure, §1356 (1990); James Wm.

25  Moore, Moore's Federal Practice, Vol. 2 § 12.34[1][c].

26      In bringing a motion pursuant to Rule 12(b)(6), the moving party has the

27  burden of persuading the Court that the complaint has failed to state a claim upon

28  which relief can be granted.  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406,

1409 (3d Cir.), cert. denied, 501 U.S. 1222 (1991). In considering the motion, "courts must consider the complaint in its entirety," and read it in the light most favorable to the plaintiff, accepting as true all factual allegations in the complaint, as well as reasonable inferences to be drawn therefrom. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S.Ct. 2499, 2509 (2007); Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). However, the Court need not accept any unwarranted deductions of fact, or conclusory legal statements cast in the form of factual allegations. See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981).

Generally, a court does not consider evidence in deciding a Rule 12(b)(6) motion; however, a court may consider exhibits attached to the complaint as well as documents that are not physically attached to the complaint but "whose contents are alleged in [the] complaint and whose authenticity no party questions." Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994), cert. denied, 512 U.S. 1219 (1994). Facts of which a court may take judicial notice pursuant to Fed. R. Evid. 201 are also properly considered. Mir v. Little Company of Mary Hospital, 844 F.2d 646, 649 (9th Cir. 1988).

### III. Title II of the ADA and Section 504 of the Rehabilitation Act

The Court discusses plaintiff's ADA and Rehabilitation Act claims together because the similarity of their language compel dismissal of both claims under the same reasoning.

The substantive prohibition of Title II of the ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. The ADA defines "public entity" to include "any State or local

1  government . . . or any department, agency, special purpose district, or other

2  instrumentality of a State or States or local government . . . ." 42 U.S.C.

3  § 12131(1).

4          The substantive prohibition of the relevant Rehabilitation Act contains similar

5  language:

6              No otherwise qualified individual with a disability in the United

7          States, as defined in section 705(20) of this title, shall, solely by

8          reason of her or his disability, be excluded from the participation in, be

9          denied the benefits of, or be subjected to discrimination under any

10         program or activity receiving Federal financial assistance or under any

11         program or activity conducted by any Executive agency or by the

12         United States Postal Service.

13  29 U.S.C. § 794 (Rehabilitation Act § 504).

14         Here, plaintiff has not alleged any facts from which it could be inferred that

15  she is a "qualified individual with a disability."  In her opposition, plaintiff does not

16  suggest she is a qualified individual with a disability; rather, plaintiff contends that

17  because she advocated on behalf of students who were disabled, she should be

18  able to bring a claim under this statute.

19         Plaintiff relies on the First Circuit case of Weber v. Cranston School

20  Committee, 212 F.3d 41 (1st Cir. 2000), wherein the First Circuit held that a parent

21  who was retaliated against for her advocacy on behalf of her child had standing

22  under § 504 to sue. Id. at 49. There, the court first noted that the Rehabilitation

23  Act incorporated the remedy provisions of Title VI of Civil Rights Act, 42 U.S.C. §

24  2000d (prohibiting race and national origin discrimination in government programs).

25  Weber, 212 F.3d at 48. The court then noted that Title VI, in turn, has an anti-

26  retaliation provision, found in its implementing regulations:

27              No recipient or other person shall intimidate, threaten, coerce,

28          or discriminate against any individual for the purpose of interfering

1    with any right or privilege secured by section 601 of the Act or this

2    part, or because he has made a complaint, testified, assisted, or

3    participated in any manner in an investigation, proceeding or hearing

4    under this part.

5  See Weber, 212 F.3d at 48 (quoting 34 C.F.R. §§ 100.7(e)).  Next, the court

6  considered the fact that Title VI extends its remedies to "any person aggrieved," a

7  phrase which has been interpreted in other statutes to extend to all those within the

8  broad scope of Article III standing.  Weber, 212 F.3d at 48 (citing 42 U.S.C.

9  § 2000d-2).  Therefore, the First Circuit found that the plaintiff could maintain her

10  action under § 504 of the Rehabilitation Act.

11         The rationale of Weber is not wholly unpersuasive.  However, a Ninth Circuit

12  case, which is binding on this Court, compels a conclusion contrary to that reached

13  by the Weber court.

14         In Zimmerman v. Oregon Dep't of Justice, 170 F.3d 1169 (9th Cir. 1999), the

15  court considered whether an employee could assert a claim against his employer,

16  the Oregon Department of Justice, under Title II of the ADA.  In concluding that he

17  could not, the Ninth Circuit interpreted the statutory prohibition found in Title II,

18  which is set forth supra, as relating to the "outputs" of the public agency rather than

19  the "inputs" of that agency.  Zimmerman, 170 F.3d at 1174.  The Ninth Circuit

20  explained this distinction at length:

21         A common understanding of the [statutory language] shows

22         that it applies only to the "outputs" of a public agency, not to "inputs"

23         such as employment. . . .  First, employment by a public entity is not

24         commonly thought of as a "service, program, or activity of a public

25         entity."  Second, the "action" words in the sentence presuppose that

26         the public entity provides an output that is generally available, and

27         that an individual seeks to participate in or receive the benefit of such

28         an output.

1    Consider, for example, how a Parks Department would answer

2    the question, "What are the services, programs, and activities of the

3    Parks Department?"  It might answer, "We operate a swimming pool;

4    we lead nature walks; we maintain playgrounds."  It would not answer,

5    "We buy lawnmowers and hire people to operate them."  The latter is

6    a means to deliver the services, programs, and activities of the

7    hypothetical Parks Department, but it is not itself a service, program,

8    or activity of the Parks Department.

9    Similarly, consider how a member of the public would answer

10    the question, "What are the services, programs, and activities of the

11    Parks Department in which you want to participate, or whose benefits

12    you seek to receive?"  The individual might answer, "I want to

13    participate in the Wednesday night basketball league, or find out

14    about the free children's programs for the summer months."  The

15    individual would not logically answer, "I want to go to work for the

16    Parks Department."

17    We conclude, then, that the [statutory language] does not

18    suggest that Congress intended for Title II to apply to employment.

19    Zimmerman, 170 F.3d at 1174.

20    Because plaintiff's Title II ADA claim is predicated on factual allegations that

21    relate to the "inputs" of the public agency rather than the "outputs" of the public

22    agency, her Title II claim is not actionable, and must be dismissed for that reason.

23    The Court must now consider whether the Zimmerman case forecloses

24    plaintiff's claim based on § 504 of the Rehabilitation Act.  A side-by-side

25    comparison of the relevant statutory language reveals they are virtually

26    indistinguishable as to their substantive prohibition:[1]

27    

28    _____

[1] They differ only in their coverage:  The Title II of the ADA applies to
"public entities," while the Rehabilitation Act applies to "program[s] or activit[ies]

| ADA Title II | Rehabilitation Act |
|---|---|
| Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.<br><br>42 U.S.C. § 12132. | No otherwise qualified individual with a disability in the United States, . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .<br><br>29 U.S.C. § 794. |

Because the language is virtually identical, the rationale set forth in the Zimmerman opinion applies with equal force, and plaintiff's claim based on her employment -- her "input" -- it is not actionable under § 504 of the Rehabilitation Act.

This holding is at odds with the Weber case from the First Circuit, upon which plaintiff relies. See Weber, 212 F.3d at 49. The Weber court based its decision on the broad anti-retaliation claim set forth in the implementing regulation of Title VI (which applies to Rehabilitation Act claims) in support of her claim. See 34 C.F.R. § 100.7(e); § 104.61. Specifically, the Weber court found this provision sufficient to support a mother's claim of retaliation, and viewed it as consistent with congressional intent. Weber, 212 F.3d at 49.

However, in reaching its conclusion in Zimmerman, the Ninth Circuit refused to give deference to an implementing regulation that concluded that Title II was applicable to discrimination in employment. Zimmerman, 170 F.3d at 1172-73 (rejecting 28 C.F.R. § 35.140(a)).[2] The court did so because the regulation was

receiving Federal financial assistance."

---

[2] Courts will give deference to an administrative agency's interpretation of a statute it administers when required to do so by the test set forth in Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). In Chevron, the Supreme Court set forth a two-step process courts must use to review an administrative agency's interpretation of a statute that it administers. See Chevron, 467 U.S. at 842-44. The first step requires courts to use "traditional tools of statutory construction" and determine whether Congress's intent is

1   contrary to the express language of the statute, which it concluded, as set forth

2   above, was inapplicable to the "inputs" of public agencies.  Because the Ninth

3   Circuit has interpreted the language of Title II of the ADA in this manner, and

4   because the Rehabilitation Act has virtually indistinguishable language, to the

5   extent that the regulation could be interpreted to apply to <u>employees</u> of programs

6   and activities receiving federal financial assistance, this Court must decline to give

7   deference to the regulation because it is contrary to the unambiguous intent of

8   Congress.[3]  <u>Chevron</u>, 467 U.S. at 843 n.9.

9        As set forth above, the Court holds that plaintiff's claims are not actionable

10   under either Title II of the ADA or § 504 of the Rehabilitation Act.  Defendant's

11   Motion to Dismiss is therefore **GRANTED** as to the first and second causes of

12   action.

13                      **IV. 1964 Civil Rights Act, Title VI**

14        The prohibition set forth in Title VI of the 1964 Civil Rights Act is found at 42

15   U.S.C. § 2000d:

16            No person in the United States shall, on the ground of race,

17        color, or national origin, be excluded from participation in, be denied

18        the benefits of, or be subjected to discrimination under any program

19        or activity receiving Federal financial assistance.

20   _____

21   unambiguous as to the issue to be decided by the court. <u>Chevron</u>, 467 U.S. at

22   843 n.9.  "If the intent of Congress is clear, that is the end of the matter; for the
     court, as well as the agency, must give effect to the unambiguously expressed

23   intent of Congress." <u>Id.</u> at 842-43.  However, where Congress has left a gap for
     the administrative agency to fill, courts give deference to the administrative

24   regulation unless it is "arbitrary, capricious, or manifestly contrary to the statute."

25   <u>Id.</u> at 843-44.

26        [3] By the same token, to the extent the regulation could be interpreted to
     apply to employees of the public entity, the Court must decline to give deference

27   to a similar implementing regulation of Title II of the ADA.  <u>See</u> 28 C.F.R.
     § 35.134.

28

Id. The Complaint does not set forth any factual allegations that plaintiff raised the issue of students being excluded from, being denied the benefits of, or otherwise being subjected to discrimination, on the basis of "race, color, or national origin." Accordingly, although the Court **GRANTS** the motion to dismiss the third cause of action, the Court also **GRANTS** leave to amend this claim.

## V. Conclusion

As set forth herein, defendants Motion to Dismiss all claims is **GRANTED**. Plaintiff's first and second causes of action are dismissed **WITH PREJUDICE**; plaintiff is **GRANTED** ten days' leave to amend the third cause of action.

Defendant's request for attorney fees and plaintiff's request for sanctions are **DENIED**.

**IT IS SO ORDERED.**

DATE:  August 1, 2007

STEPHEN G. LARSON
UNITED STATES DISTRICT JUDGE